UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RANDALL D. HANSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04921-JRS-DML |
| | ) | |
| WEXFORD OF INDIANA LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Randall D. Hansen, a former inmate at New Castle Correctional Facility ("New Castle") brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that when he was confined at New Castle, the defendant Wexford of Indiana, LLC ("Wexford") failed to properly treat his new knee injury. Wexford has moved for summary judgment arguing that Mr. Hansen failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, Wexford's motion for summary judgment, dkt. [24], is **GRANTED**.

**I.
LEGAL STANDARD**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing

that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II.
## BACKGROUND

### A.  Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a standardized offender grievance process. Dkt. 26-1 at 1. Upon an offender's entry into IDOC and when transferred to receiving facilities during incarceration, each offender is advised of the offender grievance process during offender admission and orientation and provided a copy of the policy or instructions on how to access a copy. *Id.* at 2. The purpose of the grievance process is to provide offenders committed to IDOC with a means of resolving concerns and complaints related to the conditions of their confinement. *Id.* at 1. Offenders may address complaints about medical or mental health treatment through the grievance process. *Id.* at 2.

From October 1, 2017 until April 1, 2020, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 3. Under the recently modified grievance process, offenders are no longer required to attempt informal resolutions before submitting a formal grievance. *Id.* at 3.

An offender who wishes to submit a grievance must submit a completed Offender Grievance form to the Offender Grievance Specialist no later than ten business days from the date of the incident giving rise to the complaint or concern. *Id.* The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within five business days. *Id.* If an offender does not receive either a receipt or a rejected form within five business days, the offender shall notify the Offender Grievance Specialist of that fact and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within five business days. *Id.* Upon receipt of the grievance response from the Offender Grievance Specialist, the offender shall be permitted to appeal the response to the facility Warden/designee. *Id.* at 4. To appeal to the facility Warden/designee, the offender shall submit a Grievance Appeal form within five business days after the date of the grievance response. *Id.* The Warden's/designee's appeal response shall be completed within five business days of receipt of the appeal. *Id.*

If the offender wishes to appeal the Warden's/designee's appeal response, the offender shall check "Disagree" on the appeal response and submit the completed Grievance Appeal form and any additional documentation to the Offender Grievance Manager within five business days of the appeal response. *Id.* at 4-5. The Offender Grievance Manager has ten business days to complete his/her investigation and submit a response to the appeal unless additional time is required to fully investigate the grievance. *Id.* at 5. The Offender Grievance Manager's decision regarding the grievance is final. *Id.* Once the offender receives the Offender Grievance Manager's appeal response, he or she has exhausted all remedies at the IDOC level. *Id.*

### B.  Mr. Hansen's Participation in the Grievance Process

Mr. Hansen's grievance history report reflects no grievances filed between 2009 and the filing of Wexford's motion for summary judgment on June 4, 2020.  *See* dkt. 26-1 at 6; dkt. 26-3 (Offender Grievance History Report).  On October 2, 2018, Mr. Hansen turned in a grievance form that was returned to him on October 11, 2018 because the grievance specialist needed more information and Mr. Hansen had completed the wrong form.  Dkt. 38 at 20-21.  Mr. Hansen completed the correct form on October 16, 2018, and the form was again returned to him on October 25, 2018 for multiple reasons, including that he had not tried to informally resolve the complaint, his complaint contained multiple issues or events, and the grievance specialist needed more information.  *Id.* at 22-23.  Mr. Hansen states in his affidavit that those attempts are all he has done to try and resolve his issues.  Dkt. 36 at 1.

On October 16, 2020, three months after briefing was complete, Mr. Hansen submitted supplement exhibits to show that he successfully initiated a grievance on July 22, 2020, the same date on which Wexford filed its reply brief in support of the present motion. *See* dkt. 46-1.

### III.
### DISCUSSION

Wexford seeks summary judgment arguing that Mr. Hansen failed to exhaust his available administrative remedies as required by the PLRA. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

4

effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese,* 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

Here, Wexford argues that the undisputed evidence demonstrates that Mr. Hansen did not file a grievance appeal in compliance with the grievance policy before filing this action, and he therefore failed to exhaust his administrative remedies.  *See* dkts. 25, 47. The Court agrees.

Although Mr. Hansen has belatedly filed exhibits showing that he initiated a grievance related to his complaint on July 22, 2020, his attempts to retroactively grieve these issues are unavailing.  Unfortunately for Mr. Hansen, even if these exhibits demonstrated an exhaustion of the grievance process – which they do not – the Court does not have the ability to let claims proceed when the grievance process was not completed until after the action was filed.  The Seventh Circuit has made clear that "that exhaustion must precede litigation." *Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions. . . until such administrative remedies as are available are exhausted.").

Accordingly, Mr. Hansen failed to exhaust his available administrative remedies prior to bringing this action, and his claims must be dismissed without prejudice. *Ford v. Johnson,* 362

F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice.").

## IV.
## CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment, dkt. [24], is **GRANTED**, and the action is **DISMISSED WITHOUT PREJUDICE**. Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date:   12/11/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

RANDALL D. HANSEN
515 Indianapolis Lane
Seymour, IN 47274

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com